An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

RICHARD GRILZ,
Appellant,
vs.
JEANETTE SANCHEZ; AND CLARK
COUNTY POOL AND LAWN SERVICE,
INC.,
Respondents.

No. 60447

**FILED**

SEP 2 6 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _R. Malone_
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a district court order granting summary judgment to respondents Sanchez and Clark County Pool and Lawn Service. Eighth Judicial District Court, Clark County; Kathy A. Hardcastle, Judge.

Grilz owned a lawn maintenance and pool care business, upon which the IRS placed a lien for unpaid taxes. Grilz, rather than attempt to satisfy the lien, met with Sanchez, his daughter, to discuss transferring the business to her. Sanchez's husband and Grilz's son were both present at that meeting. Key to this case, Grilz and his son assert that Sanchez promised to pay Grilz $2,500 a month for life in exchange for control of the business, while Sanchez asserts the parties reached no such agreement.

Shortly after this meeting, Sanchez set up a corporation, Clark County Pool and Lawn Service (CCPLS), which paid the tax lien on, and took control of Grilz's company, managing its employees, contracts, and assets, including $10,000, which had been in the company's bank account. CCPLS also began paying Grilz $2,500 a month for his services as a

SUPREME COURT
OF
NEVADA

(O) 1947A

qualifier and giver of professional advice. These payments were given and taxed as though Grilz was an employee.

Eventually, CCPLS decided to terminate Grilz's employment and stop making monthly payments. Sanchez asserts that by that time, the total amount paid to Grilz was the value he would have been paid for the business. CCPLS also repaid the $10,000.

Grilz sued Sanchez and CCPLS for breach of contract and unjust enrichment, and also requested declaratory relief. He supports his claims with affidavits from two of his sons and a family friend, all of whom gave examples of times Sanchez had, allegedly, either agreed to or stated she previously agreed to the contract terms. Sanchez and CCPLS moved for summary judgment, supported by affidavits from various people stating they were unaware of any contract or agreement between Grilz and Sanchez. They also argued that they purchased the business from the IRS, not Grilz, by paying off the lien. The district court granted Sanchez and CCPLS's motion, finding the undisputed facts failed to prove an agreement existed between the parties. It also found the contract, if it existed, was oral and therefore violated the statute of frauds, and that CCPLS had purchased the business from the IRS.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. NRCP 56. There's a genuine factual dispute if a rational person could find in favor of the nonmoving party. *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005). The evidence and reasonable inferences are viewed in the light most favorable to the nonmoving party. *Id.* at 729, 121 P.3d at 1029. However, summary judgment will not be defeated by speculation or conjecture, and the

(O) 1947A

nonmoving party must set forth specific facts showing a genuine issue of material fact. *Id.* at 731, 121 P.3d at 1030-31. This court reviews the grant of summary judgment de novo. *Id.* at 729, 121 P.3d at 1029.

For a contract to be enforceable, there must be an offer, acceptance, consideration, and a meeting of the minds. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Here, all four requirements are contested, and there remain genuine issues of material fact.

First, there remains a question of whether there was an offer, acceptance, and a meeting of the minds. Affidavits setting forth specific facts that support the claim give sufficient support to withstand a motion for summary judgment. *Wood*, 121 Nev. at 731, 121 P.3d at 1030-31. Here, Grilz supports his claims with affidavits setting forth specific facts tending to show that Sanchez offered to pay Grilz $2,500 a month for life in exchange for ownership of the business. Sanchez and CCPLS argue that these affidavits do not save Grilz from summary judgment as they constitute inadmissible hearsay. However, statements by the opposing party or a representative of the opposing party are not hearsay. NRS 51.055, NRS 51.035. Sanchez is alleged to have made the contested statements, and as she is both a party and a representative of the opposing party these statements are not hearsay, the affidavits are admissible. As they set forth specific facts showing a genuine issue of material fact, they are sufficient to enable Grilz's claims to withstand summary judgment.

As to whether there was consideration, the record shows that CCPLS paid the IRS the lien amount, and that the IRS in exchange released the assets and inventory of the business to CCPLS who

"purchased [them] free and clear" on May 13, 2004. However, the document absolving the lien is titled "Release of Assets from Federal Tax Lien," suggesting that the payment merely satisfied the lien, and CCPLS did not actually purchase the business. Moreover, a tax lien by itself does not grant possession of the property to the IRS. *EC Term of Years Trust v. United States*, 550 U.S. 429, 430-31 (2007). Only once the IRS takes additional action, such as serving a levy or instituting foreclosure proceedings, does it have the legal right to take possession. 26 U.S.C. § 6331(b) (2006); *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012). Therefore, if the IRS did not actually have possession of the business, it could not sell it to CCPLS. Making Sanchez aware of the company's financial woes and failing to pay the lien so that CCPLS could purchase the assets may or may not amount to valuable consideration. But, the facts do not show that Grilz did not own the business at the time CCPLS paid the lien and could not give valuable consideration by giving up his right to control the company. As the record is unclear regarding Grilz's rights to or the IRS's possession of the company, there remains a genuine issue of material fact on whether there was adequate consideration to support a contract.

Additionally, and although neither party addresses this issue, we note the alleged contract's oral nature does not necessitate invalidation under the statute of frauds. The statute of frauds invalidates certain oral agreements, including those that *cannot* be performed within one year. NRS 111.220. However, substantial law supports that if the contract can be performed within one year and is not otherwise subject to the statute of frauds, it need not be in writing. *See Atwell v. Sw. Sec.*, 107 Nev. 820, 824-25, 820 P.2d 766, 769 (1991); *Stone v. Mission Bay Mortg. Co.*, 99 Nev.

 

802, 805, 672 P.2d 629, 630-31 (1983); *Elliott v. Chrysler Motors Corp*, 89 Nev. 402, 402-03, 514 P.2d 207, 207 (1973); *Stanley v. A. Levy & J. Zentner Co.*, 60 Nev. 432, 443, 112 P.2d 1047, 1052 (1941). Here, nothing indicated that the alleged contract could not be performed within a year, as, for example, Grilz could have passed away, thus fulfilling the terms. *See, e.g., Leonard v. Rose*, 422 P.2d 604, 607 (1967) (agreements to support a person for life are of indefinite duration, could conclude within a year, and do not come within the statute of frauds); 37 C.J.S. *Statute of Frauds*, § 51 (2008).

Finally, the parties also dispute whether Sanchez may be personally liable given that the contract existed through CCPLS and whether summary judgment is at least appropriate to the claims against her. Liability, of course, depends first upon the existence of a valid contract or unjust enrichment claim, issues that must be determined. Second, if there is a valid contract, further factual development is needed to determine whether Sanchez, as one of CCPLS's principals, is liable for a contract created before CCPLS's formation, or is liable for her personal undertaking to Grilz. Even if Sanchez is liable, there remains a question of whether the return of the $10,000 and Grilz's acceptance of that payment extinguished the contract. All of these issues are, as yet, in need of further factual development before any determination can be made on this score.

For the foregoing reasons, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

cc:    Eighth Judicial District Court Dept. 4
Janet Trost, Settlement Judge
Bell and Young, Ltd.
Silver State Legal Services
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A